GUIRDY, J.
|2A restaurant appeals a judgment in favor of a patron finding it liable for injuries sustained by the patron when she fell down two steps in the restaurant. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 2, 2010, Hermina Lavergne accompanied her daughter and granddaughter on a shopping trip to the Mall of Louisiana in Baton Rouge, Prior to going into the mall to shop, the group decided to get something to eat at BJ’s Restaurant. On entering the restaurant, the group were told that there would be a delay before they could be seated at a dining table, so they sat in the lobby to wait. When a table became available, a host approached the group to escort them to their table. Mrs. Lavergne’s daughter and granddaughter immediately followed the host, but Mrs. Lavergne lagged behind.
The nearest entrance into the dining area from the lobby required descending two steps from the lobby into the dining area. The host escorting Mrs. Lavergne’s daughter and granddaughter advised them to “watch” their step. Mrs. Lavergne, who happened to be reading something as she walked several feet behind the others, did not hear the warning and fell down the steps into the dining area. As a result of the fall, Mrs. Lavergne severely injured her right foot. Mrs. Lavergne was sixty-five years old at the time of the accident.
On December 10, 2010, Mrs. Lavergne and her husband, Darrell Lavergne, filed a petition for damages against BJ’s Restaurants, Inc., alleging that the failure to provide adequate lighting and warnings of the steps leading into the dining area caused Mrs. Lavergne’s injury. Consequently, they sought damages for Mrs. Lavergne’s medical expenses and pain and suffering and for Mr. Lavergne’s loss of consortium, BJ’s denied liability and the matter proceeded to a bench trial. Following the trial on the merits, the trial court found that the condition of the Rsteps presented an unreasonable risk of harm, but that Mrs. Lavergne also failed to exercise reasonable *921 care in walking to the table. Therefore, the court found BJ’s to be seventy percent at fault and Mrs. Lavergne to be thirty percent at fault and awarded damages in the amount of $393,386.61.[1] The trial court signed a written judgment to that effect on October 14, 2015, which judgment BJ’s suspensively appeals herein.
ISSUES PRESENTED FOR REVIEW
In this appeal, BJ’s presents two issues for our review:
1. Did the trial court misinterpret the evidence in finding negligence on the part of the restaurant?
2. Did the [tjrial [cjourt properly apply the law on premises liability?
APPLICABLE LAW
The liability of a merchant for an injury sustained on its premises is determined according to La. R.S. 9:2800.6, which provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or Rsafety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
[[Image here]]
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
Thus, merchants are required to exercise reasonable care to protect those who enter the premises, and this duty extends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers. Moore v. Murphy Oil USA, Inc., 15-0096, p. 11 (LaApp. 1 Cir. 12/23/15), 186 So.3d 135, 145, writ denied, 16-0444 (La. 5/20/16), 191 So.3d 1066.
The question of whether or not a condition presents an unreasonable risk of harm is subject to review under the mani *922 fest error standard. Thus, the trial court’s determination should be upheld if a review of the entirety of the record reveals the determination has a reasonable factual basis. Where there are two permissible views of the evidence, the factfinder’s choice cannot be manifestly erroneous or clearly wrong. Moore, 15-0096 at p. 19, 186 So.3d at 149-50.
DISCUSSION
In its assignments of error, BJ’s argues that the trial court clearly erred in finding that the steps in the restaurant presented an unreasonable risk of harm and in failing to find that the evidence presented at trial established that Mrs. Lavergne’s accident was solely caused by her inattentiveness. BJ’s argues that the evidence presented at trial established that the non-defective steps did not present an unreasonable risk of harm because the steps were open and obvious.
| fiUnder Louisiana law, a defendant generally does not have a duty to protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it. Bufkin v. Felipe’s Louisiana, LLC, 14-0288, p. 7 (La, 10/15/14), 171 So.3d 851, 856.
At trial, the parties stipulated that BJ’s “trains its hosts and hostesses to tell guests to watch their step or .. .look at the steps” as the patron is approaching the steps in the restaurant. The general manager of the BJ’s restaurant at issue, Manni Ukutegbe, testified that the warning given by hosts and hostesses is a precaution to keep customers from falling on the steps. The plaintiffs’ daughter, Nicole Deshotel, stated that prior to receiving the warning from the host on the date of the accident, she did not notice the steps. As she explained, “[w]hen he said that, it caught my attention because I didn’t notice it so I made sure that my daughter wasn’t going to trip and fall.” Similarly, Mrs. Lavergne testified that she did not see the step down at any time before she fell, stating “[i]t was a total surprise.”
The plaintiffs’ expert witness, Mitchell Wood, who was accepted by the trial court as an expert in enforcement design and architecture, testified that it is a good policy for the maitre d’ or greeter to inform patrons to watch their step as they direct patrons toward the dining area, because “there is an elevation change and ... one may not expect it.” As Mr. Wood explained:
[W]e’re in South Louisiana. Everything’s flat. ... I wouldn’t say it’s a common thing in restaurants, but it’s — it’s not common at all to have a — to have an elevation change at an entry, ... if someone doesn’t expect it. And we— here, in South Louisiana, it’s very unexpected, very — very uncommon. Um, so what you’re trying to do is make sure you’re protecting the public, warning them, telling them that, hey, be — watch your step, as you step down, use the handrails, so they can descend in — in a safe manner, because, again, we talked about the fact that you’re distracted. You actually are looking out over the restaurant itself and you may not be paying attention or you’re not — your— your eyesight or vision is not directed at your feet.
|fiMr. Wood also discussed a section found in the 2006 and 2012 editions[2] of the International Building Code, noting that the section states “it is not recommended to use short stairways in a passageway *923 since such steps may be overlooked by occupants and present a severe tripping hazard in daily use. ... They are to be avoided wherever possible.” Hence, Mr. Wood opined that the building codes do not allow the construction of “a two-step step down in this manner because ... in their research and understanding, there’s just too many instances of accidents and injuries.” Mr. Wood further opined that if a person is unfamiliar with the restaurant, the person would be at a detriment because he or she would not be aware of the elevation change, and when coming in from either bright sunlight or an outside environment, it can be difficult for someone, especially the elderly, to recognize that there is an elevation change. As he stated, “it’s an unsafe design to have ... a change of elevation so close or near the entry.”
The foregoing evidence supports the conclusion that the existence of the steps in the restaurant is not necessarily a condition that is readily apparent to all. As the steps cannot be said to be readily apparent to all, they cannot be said to be an open and obvious condition. See Moore, 15-0096 at p. 18, 186 So.3d at 149 (wherein this court found that although the condition in that case, a water display pallet, was large and obvious, “the protruding black corner of the water display pallet may have led to an unreasonably dangerous condition that was not readily apparent to all.”). Thus, BJ’s cannot be held to be relieved of any duty to protect against the condition presented, to the extent the steps in the restaurant are found to be hazardous or unreasonably dangerous. See Bufkin, 14-0288 at p. 7, 171 So.3d at 856.
In its reasons for judgment, the trial court observed that the plaintiffs were not claiming that the steps were defective in them construction. Instead, the court 17found that the plaintiffs were alleging that the use of the steps in the restaurant caused a change in elevation, which in turn created an unreasonably dangerous condition of which BJ’s failed to warn Mrs. Lavergne. The court held that “a hazardous or dangerous condition is not dependent upon a code violation” and then expressly found that the evidence submitted at trial established by a preponderance of the evidence that the condition of the steps presented an unreasonable risk of harm. The court, stated that the totality of the evidence presented at trial added up to the creation of an unreasonably dangerous condition, which evidence was comprised of Mrs. Lavergne being given a menu that was not retrieved from her as she began walking to the table; the host not verbally warning Mrs. Lavergne about the steps; the circumstances surrounding the location of the steps; the ambience of the restaurant; and the lack of any warnings to use caution while traversing the steps, other than the verbal warnings from hosts/hostesses.
To determine whether a condition is unreasonably dangerous, a risk-utility balancing test is generally employed, wherein the gravity and the risk of harm is balanced against the individual and societal utility and the cost and feasibility of repair using the following four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and ap-parentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs activities in terms of social utility or whether the activities were dangerous, by nature. Bufkin, 14-0288 at p. 6, 171 So.3d at 856.
Regarding the first factor in the risk-utility test, the only evidence presented at trial regarding this factor came from the plaintiffs’ expert witness, Mr. Wood. On questioning, .he. opined as an architect and designer that the reason for a “multilevel *924 restaurant” would be to oversee the entire restaurant for the availability of tables, but stated that the only use of the steps , in BJ's restaurant was 18predominantIy aesthetic. He testified that he did not think the steps had any social utility whatsoever.
Under the second factor, as previously discussed, not only was there evidence presented regarding whether the steps were obvious and apparent, but also as previously discussed, the evidence presented at trial indicated a significant likelihood that the steps could cause people to fall, due not only to the existence of the steps in the pathway leading directly from the lobby to the dining area of the restaurant, but also due to the low-level lighting used in the restaurant[3] and the overall decor of the restaurant.
Concerning the third factor, Mr. Wood testified regarding several things he would suggest to correct the deficiency in design presented by the interior steps, with the primary recommendation being to change the steps to a ramp. While Mr. Wood did not testify regarding the costs of making such a change, he did state that “it wouldn’t be difficult to do.” He also suggested changing the lighting level in the restaurant and putting up warning signs to notify customers to “watch your step” as other measures that could be taken to remedy the hazard presented by the steps.
Finally, as to the last factor of the risk-utility balancing test, it is undisputed that at the time of the accident, Mrs. Lavergne was reading something and was not paying attention to where she was walking. Mrs. Lavergne agreed with knowing that a person is supposed to pay attention to where she is going when she is walking and that it is not a good idea to read while walking, particularly in an unfamiliar environment. However, Mrs. Lavergne clarified that had there been a sign warning about the steps, she would have seen it because she was not reading 19the entire time she was waiting to be seated. She also testified that although she was not certain that she was reading a menu when she fell, she stated that it had to be a menu because she did not read anything else nor have any other reading material with her.
Considering the foregoing, we cannot say the trial court’s determination that the steps in the restaurant presented an unreasonable risk of harm was clearly wrong. Our deference to the trial court’s determination in this case is particularly underscored by the faet that BJ’s, by its own policy and procedure of verbally warning patrons of the steps, recognized the hazard presented by the steps, which was reasonably foreseeable, as required by La. R.S. 9:2800.6(B)(1).
It is undisputed that BJ’s voluntarily instituted a policy of training its hosts and hostesses to warn patrons of the interior steps located within the restaurant, and as acknowledged by Mr. Ukutegbe, the general manager of the restaurant, this is done for the safety of restaurant patrons. Mr. Ukutegbe testified that when there is a party of guests, the host or hostess is not required to stand and individually warn every single person in the group, but the host or hostess should speak loudly enough to ensure that all the members of the group hear the warning.
*925 Mrs. Lavergne testified that she saw the host approach her daughter and her granddaughter and saw them walk to a table, but she was not with them. She explained that “[tjhere was a line because they were busy.” She further explained that when her daughter got to a certain point, “the gentleman came and he was going to bring them to the table. And, um, I told them to just go ahead because I was slow and I was behind them, ... But I didn’t have anybody to come help me.” Mrs. Lavergne testified that there was nobody to say “watch your step” or to assist her.
Mrs. Deshotel testified that she informed the restaurant staff that they were a party of three when they were told there would be a wait for a table. In viewing | ipthe video of the incident, we observe that the host appears to turn around twice and speak while leading the group, but Mrs. Lavergne does not appear in his immediate proximity at either time, and she testified that she did not hear the verbal warning given by the host. And although conflicting evidence was presented as to whether the item Mrs. Lavergne was reading was a restaurant menu, in light of Mrs. Lavergne’s and Mrs. Deshotel’s testimony that they were given menus to read while waiting and that Mrs. Lavergne did not have any other reading material with her that day, we cannot say the trial court’s factual determination that the item Mrs. Lavergne was reading was, in fact, a menu to be manifestly erroneous.
Under the foregoing circumstances, we likewise can find no error in the trial court’s conclusion that BJ’s failed to exercise reasonable care in this case. The trial court evidently found, and the record supports the finding, that the steps constituted an unreasonable risk of harm and that the verbal warning given by the host in this case was insufficient under the - circumstances and thus constituted a failure to exercise reasonable care that increased the risk of harm to Mrs. Lavergne. Accordingly, we find the judgment of the trial court should be affirmed.[4]
CONCLUSION
Finding that the law and evidence. support the trial court’s determination of BJ’s liability for the injury sustained by Mrs. Lavergne, we affirm. All costs of this appeal are thus cast to the appellant, BJ’s Restaurants, Inc.
AFFIRMED.

. This total award is comprised of $270,000.00 in general damages and $108,386.61 in special damages for Mrs. Lav-ergne and $15,000.00 for loss of consortium for Mr. Lavergne.

. The BJ’s restaurant at issue was constructed in 2008.

. The measured lighting level for the restaurant was 5.6 foot-candles, and the minimum lighting level required under the 2006 International Building Code was not less than one foot-candle. Although he acknowledged that the restaurant’s lighting was not in violation of any codes, insofar that the level was greater than the minimum of one foot-candle required, Mr. Wood still opined that the restaurant's low lighting was a problem and that proper lighting would require a minimum of 7 ½ to 15 foot-candles reading.

. As the steps at issue are a part of the restaurant’s construction, the element of notice under La. R.S. 9:2800.6(B)(2) is not at issue,